## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
)
**DR. EMMA M. MUÑOZ**                               )
1216 Tanley Road                                        )
Silver Spring, Maryland 20904                       )
)
        Plaintiff                                    )
)
v.                                                          )          Civil No. _____
)
**BOARD OF TRUSTEES OF THE**                 )
**UNIVERSITY OF THE DISTRICT**             )
**OF COLUMBIA**                                       )
)
Serve: Hon. Adrian Fenty                             )
Mayor of the District of Columbia                 )
Executive Office of the Mayor                      )          **COMPLAINT**
John A. Wilson Building                              )
1350 Pennsylvania Avenue, N.W.                 )
Suite 600                                                 )
Washington, D.C. 20004                             )
)
Hon. Peter J. Nickles, Esquire                     )
Attorney General                                       )
Office of the Attorney General                     )
One Judiciary Square                                 )
441 4th Street, N.W., Suite 1060-N             )
Washington, D.C. 20001                             )
)
James W. Dyke, Jr., Esquire                       )
Chair, Board of Trustees                            )
University of the District of Columbia          )
4200 Connecticut Avenue, NW                    )
Washington, D.C. 20008                             )
)
)
and                                                         )
)
)
**DR. APRIL MASSEY**                                )
1363 Kalmia Road, N.W.                             )
Washington, D.C. 20012-1444                     )

```
                                          )
Assistant Dean                            )
College of Arts and Sciences              )
University of the District of Columbia     )
4200 Connecticut Avenue, N.W.             )
Washington, D.C. 20008                    )
                        Defendants         )
                                          )
_____)
```

1.    This is a civil action alleging unlawful discrimination, harassment, and retaliation in the course of employment, on the basis of national origin and race.

2.    This action is brought by plaintiff Dr. Emma M. Muñoz ("Plaintiff") against her employer, the Board of Trustees of the University of the District of Columbia ("UDC"), and against Plaintiff's immediate superior, Dr. April Massey ("Massey"), in her individual capacity.

3.    This complaint states claims under 42 U.S.C. § 1983 for deprivation of constitutional rights under color of state law; under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq.; under the D.C. Human Rights Act, Title 2, Chapter 14 of the D.C. Code, for discrimination and retaliation during the course of employment; and pendent claims arising under the common law of the District of Columbia.

Parties

4.    Plaintiff is, and at all times material to this action has been, a resident and citizen of the State of Maryland. At all times relevant to this action Plaintiff performed her job responsibilities in an outstanding manner. Plaintiff is a white Hispanic woman born and raised in Puerto Rico.

5.    Defendant Board of Trustees of the University of the District of Columbia is a

public educational institution established under the laws of the District of Columbia (D.C. Code § 38-1202.01(a)); may sue and be sued in its own name; is an employer within the meaning of 42 U.S.C. § 2000e(b); and has had more than 500 employees in each of the 20 or more calendar weeks in the current or preceding calendar year. UDC's administration, faculty, employees, and students are predominantly African-American.

6.    Defendant Massey is the Assistant Dean of the College of Arts and Sciences at UDC. At the time of the discriminatory events related herein, Massey was the Chair of the Department of Languages and Communications Disorders ("DLCD") at UDC, in which capacity she exercised supervisory responsibilities over Plaintiff. Massey is an African-American woman, and at all times material to this action has been, a resident and citizen of the District of Columbia.

<u>Jurisdiction</u>

7.    This Court has jurisdiction over the claims in this action arising under the laws of the United States pursuant to 28 U.S.C. 1331, 28 U.S.C. 1343, and 42 U.S.C. 2000e(f)(3).

8.    This court has pendent jurisdiction over the claims in this action arising under the D.C. Human Rights Act and the common law of the District of Columbia.

9.    The unlawful employment practices alleged herein occurred in the District of Columbia. Each party defendant is a resident, for jurisdictional purposes, of the District of Columbia.

10. Plaintiff filed an initial Charge of Discrimination with the United States Equal Employment Opportunity Commission on February 14, 2007 (EEOC Case No. 570-2006-

01675).   Those charges alleged unlawful discrimination on the basis of national origin and race, and also alleged unlawful retaliation against Plaintiff for her complaints of discrimination.

11. A notice of Plaintiff's right to sue has been issued, dated March 6, 2008.  A copy of that notice is attached hereto and incorporated herein as <u>Attachment A</u>.

12. This action is timely filed.

<u>Background</u>

13. Plaintiff has a Ph.D. in Linguistics from Georgetown University.

14. In the Fall of 1993, Plaintiff and Defendant Massey were hired by UDC to the faculty of the DLCD.

15. Throughout her employment at UDC, Plaintiff was one of only two (2) Hispanic faculty members at UDC.

16. Throughout her employment at UDC, Plaintiff performed her faculty duties with outstanding evaluations by three (3) other UDC Department Chairs.

17. In 1999, Massey was appointed Chair of the DLCD at UDC, with immediate supervisory responsibility over Plaintiff.  Massey held this appointment until 2004.

18.  In the Fall of 2002, Plaintiff was promoted to the rank of Associate Professor, a position which granted her tenure at UDC.

19. During her term as Chair of DLCD, Massey engaged in a consistent and continuous pattern of discriminatory harassment and adverse employment actions against Plaintiff, including:

a)  not responding to Plaintiff's faculty memoranda correspondence;

b)  refusing to grant authorization to allow Plaintiff to teach courses in Plaintiff's

field of expertise;

c) not allowing non-grant students to enroll in courses Plaintiff was offering under a U.S. Department of Education (USDE) grant Plaintiff had received on the subject of bilingual speech language pathologists (USDE No. H325E980029);

d) requesting Plaintiff to plan and organize a faculty activity and then blocking its implementation after Plaintiff had completed the planning; and

e) disregarding repeated requests by Plaintiff to discuss academic issues relevant to Plaintiff's faculty responsibilities.

20. During her term as Chair, Massey refused or failed to call any meetings of the DLCD Admissions Committee, in which Plaintiff and Massey were two of its three members, and unilaterally selected for admission all DLCD student candidates, thereby depriving Plaintiff of any participation or involvement in that process. As a consequence, the students admitted by Massey were overwhelmingly African-American.

21. During her term as Chair of DLCD, Massey directed disrespectful and discriminatory comments to Plaintiff, including a comment that "You don't know how to fight like us Black girls!," and using abusive, threatening and derogatory language in her conversations with Plaintiff and in voice mail messages in Plaintiff's telephone.

22. During her term as Chair of DLCD, Massey made several derogatory statements to Plaintiff and to Plaintiff's students questioning Plaintiff's ethics and integrity regarding Plaintiff's management and handling of the USDE grant, over which Massey had no jurisdictional or supervisory responsibilities. Massey also attempted to

coerce some of Plaintiff's students into speaking against Plaintiff's management of the USDE grant, in one instance calling a student at her home in the evening, asking probing questions about Plaintiff's managerial style regarding the grant.

23. In the Spring of 2003, after Massey announced her intention to resign her chairmanship of DLCD effective at the end of that summer, the DLCD faculty unanimously elected Plaintiff as her successor. At the beginning of the summer of 2003, Plaintiff spoke with Massey and offered to work without compensation during the summer with Massey to facilitate the transition of the chairmanship, an offer declined by Massey.

24. In the Fall of 2003, and without further explanation, Dr. Rachel Petty, the Dean of UDC's College of Arts and Sciences (CAS) and an African-American, ignored the faculty's vote and re-appointed Massey to the Chair.

25. During the Fall 2004 semester, Massey arbitrarily and capriciously authorized that $828.23 be deducted from Plaintiff's December 2004 paycheck for missing a day of work, despite Plaintiff's perfect attendance record up to that date, an action never taken against Plaintiff's African-American faculty colleagues. After Plaintiff challenged this deduction, UDC agreed with Plaintiff but never returned the withheld sum to Plaintiff.

26. Although UDC was no longer performing student evaluations of faculty during the Fall 2004 semester, Massey required Plaintiff's students to evaluate one of Plaintiff's classes outside her presence during the class period of another professor, Dr. Pat Randolph. Upon information and belief, Massey did not require a similar evaluation of any other UDC African-American faculty member during that semester.

27. During the Fall 2004 semester, Massey arbitrarily and capriciously prevented all UDC students from registering for Plaintiff's Spring 2005 classes by closing off Plaintiff's Spring 2005 class offerings within the UDC computer registration system, thereby depriving Plaintiff from having any teaching duties during that semester. This action by Massey was not taken against Plaintiff's African-American faculty colleagues.

28. During the Fall 2004 semester, at a DLCD-SLP faculty meeting, Plaintiff raised a concern over the inadequacy and unfairness of the design, procedure and evaluation of the Department's Comprehensive Exams for its students, which Plaintiff stated were secretive in nature, excluded faculty members from the process, and favored African-American students over white, Hispanic, and gay students. Plaintiff's fellow faculty members agreed with her, and Plaintiff re-stated her concerns in a memorandum sent to Massey, who had not been present at the meeting. Upon receiving Plaintiff's memorandum, Massey telephoned Plaintiff and left Plaintiff a recorded message expressing her outrage about Plaintiff's memorandum and angrily accusing Plaintiff of doing things behind her back.

29. On several occasions during the Fall of 2004, Massey told Plaintiff she "was tired of [then UDC President] Dr. Pollard's praise of [Plaintiff]" to Massey.

30. During the Fall 2004 semester, Plaintiff received an invitation to apply for an Endowed Chair position at North Carolina Central University, and upon Massey learning about this offer, she told Plaintiff in a hostile tone of voice, "You're not qualified" for it.

31. During the Fall of 2004, Massey falsely accused Plaintiff of having supplied answers to four UDC students for the Departmental Comprehensive Exams, allegedly basing her accusation on a written note from an African-American student with whom

Massey has a close friendship. The four students, all female graduate students with

excellent academic grades and the highest ranking in their graduating class, included two

Hispanics, one white, and one African-American. The accusing student had previously

failed a key course taught by Plaintiff, and subsequently disowned her written accusation,

admitting that she had written it under duress due to Massey's harassment and pressures

directed at her that she was willing to "write anything to get her off my back."

32. In violation of fundamental due process requirements for UDC faculty

employees under UDC procedures and regulations (including the Fifth Master

Agreement Between UDC and the UDC Faculty Association/NEA, effective September

17, 2003 through September 30, 2006), Massey sent a memorandum dated November 30,

2004 to UDC's Provost and Vice President for Academic Affairs, Dr. Wilhelmina

Reuben Cooke, recommending, *inter alia*, that Plaintiff be the subject of an improper *ad

hoc* and *sui generis* investigation process, and that she be placed on indefinite

administrative leave in the interim. The UDC Provost accepted the recommendation and

placed Plaintiff on indefinite administrative leave, effective at the beginning of 2005, and

before any investigation was initiated, in violation of UDC regulations and procedures.

33. After assuring Plaintiff that the *ad* hoc investigation would last only six (6)

weeks, UDC's Provost prolonged this *ad hoc, sui generis* investigation for 12 months

(i.e., from November, 2004 to November, 2005), using procedures different from and

contrary to those in effect at UDC and without previously informing the UDC Faculty

Association (UDCFA/NEA), as required by UDC policies and procedures. During this

"investigation," Plaintiff was never allowed to speak in her own defense, confront

witnesses against her, record any proceedings to which she was summoned, or presented

with any investigative report.

34.  On November 18, 2005, without Plaintiff having been permitted to speak in her own defense at any time, the UDC Provost issued a "Statement of Cause" accompanied by a "Response to Recommended Adverse Action" calling for Plaintiff to be charged with professional misconduct and interference with the integrity of UDC's academic operations, and that she be suspended for a period of four and one-half months (one semester), and that the adverse action be placed in her personnel file as part of her employment record.

35.  On January 20, 2006, and pursuant to the procedures of UDC's Fifth Master Agreement, Plaintiff appealed the Provost's conclusions and recommendations.

36.  On February 28, 2006, Dr. William Pollard, the President of UDC, dismissed the Provost's proposed adverse action against Plaintiff on grounds of insufficient evidence, although he expressed support for the investigation and stated that Massey and other UDC officials had acted appropriately.  No action was taken by UDC to restore Plaintiff's pay.

37.  During the summer and Fall of 2006, Plaintiff addressed several letters to various officers of UDC requesting clarification of Plaintiff's employment status, and received no response.

38.  On November 22, 2006, Dr. Leslie Richards, President of the UDCFA/NEA sent an e-mail to Plaintiff stating: "The University has approached me with attempting to settle the case through some restitution of your pay and other issues, however I do not know whether you are interested in any of this."  Plaintiff responded by stating she would be willing to negotiate through her attorney.  UDC never responded to Plaintiff or her

attorney.

39.  As a direct result of all of these adverse actions against Plaintiff by Massey and UDC, Plaintiff suffered severe emotional distress and anguish which adversely affected her health and forced her to take sick leave in the Fall of 2005, from which she has not yet recovered.

40.  Since the expiration of her sick leave in February, 2006, UDC has failed to pay Plaintiff her employment wages.

41.  During the Summer of 2007, without prior notice to Plaintiff, UDC terminated Plaintiff's health insurance policy and deprived Plaintiff of any opportunity to apply for COBRA extension coverage.

## COUNT I
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
## (DUE PROCESS—AGAINST UDC)

42.  The allegations of each of the foregoing paragraphs are incorporated as if realleged.

43.  As an employee of UDC, Plaintiff had a legitimate claim of entitlement to a place of employment operated in a manner consistent with D.C. law and established policies.  Such laws and policies include the D.C. Human Rights Act, the employment guidelines and procedures of UDC, and UDC's Fifth Master Agreement, which set forth a procedure for investigation and resolution of employment-related claims against faculty members.

44.  Plaintiff's legitimate claim of entitlement under these provisions and policies gives rise to a right protected by the Due process Clause of the Fourteenth Amendment to the Constitution of the United States.

45. By failing to undertake an appropriate investigation of the charges against Plaintiff, by failing to take appropriate remedial and corrective action upon dismissal of the charges against Plaintiff, by failing to address and terminate the retaliatory conduct directed towards, Plaintiff, and in the constructive termination and discharge of Plaintiff, UDC deprived and denied to Plaintiff her rights under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

46. In so doing, UDC acted pursuant to decisions officially adopted and promulgated by UDC under color of state law.

47. The deprivation of Plaintiff's rights was visited pursuant to governmental custom, supervisory indifference, and tacit authorization and ratification of such conduct by UDC.

48. UDC has the authority to establish policy with respect to the actions complained of by Plaintiff.

49. As a direct and proximate result of UDC's conduct, Plaintiff has been, is being, and will continue to suffer injury and damage, including loss of reputation, fear and outrage, medical and other expenses, loss of income, loss of employee benefits, loss of intangible benefits of employment, loss of earnings capacity and potential, embarrassment, inconvenience, pain, suffering, severe mental and emotional anguish and distress, consequential damages, costs of litigation including attorney's fees, and other injury.

## COUNT II
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
### (EQUAL PROTECTION – AGAINST UDC)

50.  The allegations of each of the foregoing paragraphs are incorporated as if realleged.

51.  By failing to undertake an appropriate investigation of the charges against Plaintiff, by failing to take appropriate remedial and corrective action upon dismissal of the charges against Plaintiff, by failing to address and terminate the retaliatory conduct directed towards, Plaintiff, and in the constructive termination and discharge of Plaintiff, UDC deprived and denied to Plaintiff her rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

52.  In so doing, UDC acted pursuant to decisions officially adopted and promulgated by UDC under color of state law.

53.  The deprivation of Plaintiff's rights was visited pursuant to governmental custom, supervisory indifference, and tacit authorization and ratification of such conduct by UDC.

54.  UDC has the authority to establish policy with respect to the actions complained of by Plaintiff.

55.  As a direct and proximate result of UDC's conduct, Plaintiff has been, is being, and will continue to suffer injury and damage, including loss of reputation, fear and outrage, medical and other expenses, loss of income, loss of employee benefits, loss of intangible benefits of employment, loss of earnings capacity and potential, embarrassment, inconvenience, pain, suffering, severe mental and emotional anguish and distress, consequential damages, costs of litigation including attorney's fees, and other

injury.

## COUNT III
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
### (EQUAL PROTECTION – AGAINST MASSEY)

56.  The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

57.  By acting in the manner as set forth above, Massey acting in her individual capacity, and under color of state law, harassed and discriminated against Plaintiff on account of her race and national origin, and accordingly deprived and denied Plaintiff of her rights under the Equal protection Clause of the Fourteenth Amendment to the Constitution of the United States.

58.  This conduct by Massey evidenced malice, spite, and ill will; was willful and wanton; and evidenced conscious disregard for the rights of Plaintiff.

59.  As a direct and proximate result of Massey's conduct, Plaintiff has been, is being, and will continue to suffer injury and damage, including loss of reputation, fear and outrage, medical and other expenses, loss of income, loss of employee benefits, loss of intangible benefits of employment, loss of earnings capacity and potential, embarrassment, inconvenience, pain, suffering, severe mental and emotional anguish and distress, consequential damages, costs of litigation including attorney's fees, and other injury.

## COUNT IV
## DISCRIMINATION IN THE COURSE OF EMPLOYMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (AGAINST UDC)

60.  The allegations of each of the foregoing paragraphs are incorporated herein as

if realleged.

61.  UDC, through its supervisory employees, including Massey, discriminated against and harassed Plaintiff on account of her race (white) and national origin (Hispanic) during the course of her employment.

62.  This discrimination and harassment was with respect to Plaintiff's terms, conditions, and privileges of employment, created an intolerably hostile work environment, and constituted a violation of Title VII of the Civil Rights Act of 1964, as amended.

63.  This conduct by defendants was actuated by malice and reckless indifference to Plaintiff's federally protected rights, within the meaning of Section 102(b)(1) of the Civil Rights Act of 1991.

64.  As a direct and proximate result of this discrimination and harassment, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

## COUNT V
## DISCRIMINATION IN THE TERMINATION OF EMPLOYMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT (AGAINST UDC)

65.  The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

66.  UDC, through its employees, agents and officers, constructively discharged

14

and terminated Plaintiff's employment on account of her race (white) and national origin (Hispanic), for reasons arising from discrimination on account of Plaintiff's race and national origin, and for reasons arising from retaliation against Plaintiff for complaining about discrimination against her on account of her race and national origin.

67.  This constructive discharge and termination constituted a violation of Title VII of the Civil Rights Act of 1964, as amended.

68.  This conduct by UDC was actuated by malice and reckless indifference to Plaintiff's federally protected rights, within the meaning of Section 102(b)(1) of the Civil Rights Act of 1991.

69.  As a direct and proximate result of this discrimination and harassment, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

**COUNT VI**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT**
**(AGAINST UDC)**

70.  The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

71.  UDC, through Massey and its officers and employees, discriminated against Plaintiff in retaliation for her filing a grievance with UDC and the EEOC, and for her complaints about the discriminatory treatment she was subjected to by Massey and

UDC's officials, on account of her race (white) and national origin (Hispanic).

72. This retaliation and discrimination was with respect to Plaintiff's terms, conditions, and privileges of employment and constituted a violation of Title VII of the Civil Rights Act of 1964, as amended.

73. This conduct by UDC was actuated by malice and reckless indifference to Plaintiff's federally protected rights, within the meaning of Section 102(b)(1) of the Civil Rights Act of 1991.

74. As a direct and proximate result of this discrimination and retaliation, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury

## COUNT VII
### DISCRIMINATION IN THE COURSE OF EMPLOYMENT
### IN VIOLATION OF D.C. HUMAN RIGHTS ACT
### (AGAINST UDC)

75. The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

76. UDC, through its supervisory employees, including Massey, discriminated against and harassed Plaintiff on account of her race (white) and national origin (Hispanic) during the course of her employment.

77. This discrimination and harassment was with respect to Plaintiff's terms, conditions, and privileges of employment, created an intolerably hostile work

environment, and constituted a violation of section 2-1402-11 of the D.C. Human Rights Act of1977, as amended.

78.  As a direct and proximate result of this discrimination and harassment, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

**COUNT VIII**
**DISCRIMINATION IN THE TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT**
**(AGAINST UDC)**

79.  The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

80.  UDC, through its employees, agents and officers, constructively discharged and terminated Plaintiff's employment on account of her race (white) and national origin (Hispanic), for reasons arising from discrimination on account of Plaintiff's race and national origin, and for reasons arising from retaliation against Plaintiff for complaining about discrimination against her on account of her race and national origin.

81.  This constructive discharge and termination constituted a violation of section 2-1402-11 of the D.C. Human Rights Act of 1977, as amended.

82.  As a direct and proximate result of this discrimination and harassment, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and benefits of employment, other past and future loss of income and benefits of

employment, other past and future pecuniary losses, severe emotional pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and

other injury.

**COUNT IX**
**RETALIATION IN VIOLATION OF**
**THE D.C. HUMAN RIGHTS ACT**
**(AGAINST UDC)**

83.  The allegations of each of the foregoing paragraphs are incorporated herein as

if realleged.

84.  UDC, through Massey and its officers and employees, discriminated against

Plaintiff in retaliation for her filing a grievance with UDC and the EEOC, and for her

complaints about the discriminatory treatment she was subjected to by Massey and

UDC's officials, on account of her race (white) and national origin (Hispanic).

85.  This retaliation and discrimination was with respect to Plaintiff's terms,

conditions, and privileges of employment and constituted a violation of section 2-1402-

61 the D.C.Human Rights Act of 1977, as amended.

86.  As a direct and proximate result of this discrimination and retaliation,

Plaintiff has suffered and continues to suffer injury, including past and future loss of

income and benefits of employment, other past and future loss of income and benefits of

employment, other past and future pecuniary losses, severe emotional pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and

other injury

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST UDC AND MASSEY)

87. The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

88. UDC and Massey engaged in conduct which was intentional or reckless, in that defendants and their employees and officials had the specific purpose of inflicting emotional distress on Plaintiff, and intended their conduct and knew or should have known that emotional distress would likely result.

89. This conduct was outrageous and intolerable in that it offended against generally accepted standards of decency and morality.

90. This conduct by defendants was willful and wanton, and evidenced malice, ill will, and conscious disregard for the rights of Plaintiff.

91. As a direct and proximate result of defendants' conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer severe emotional distress, injury and damages, including loss of income, loss of employment benefits, litigation expense including attorneys' fees, embarrassment, inconvenience, severe mental anguish, pain, suffering, loss of future employment and employment opportunities, medical expense, consequential damages, loss of enjoyment of life, other nonpecuniary losses, and other injury. These injuries are not the result of a sudden or obvious mechanical or structural change in the body.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court enter judgment in her favor, and against defendants, and each of them, on the above stated Counts, and on each of them as described above, and in addition that this Court:

1. award Plaintiff compensatory damages in the amount of $1,000,000 for each of Counts I, II, III and VII;

2. award Plaintiff compensatory damages in the amount of $300,000 for Counts IV, V, and VI;

2. award Plaintiff compensatory damages in the amount of $300,000 for each of the Counts VIII, IX, and X;

3. award Plaintiff punitive damages in the amount of $300,000 for Count III;

4. award Plaintiff punitive damages in the amount of $300,000 for Counts IV, V and VI;

5. award Plaintiff punitive damages in the amount of $1,000,000 for Count X;

6. award Plaintiff her lost wages, salary, benefits of employment, backpay and front pay;

7. award Plaintiff reasonable attorney's fees and costs of this action, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k) and Section 113 of the Civil Rights Act of 1991; and

8. award such other and further relief to Plaintiff as may be appropriate under the circumstances.

DATE: June 2, 2008


_Michael E. Veve, PLLC_

Michael E. Veve, PLLC
(D.C. Bar No. 222679)
Lasa, Monroig & Veve, LLP
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
Tel.: (202)261-3524
Fax: (202)261-3523
e-mail: meveve@aol.com

Counsel for Plaintiff

EEOC Form 161-B (3/98)

**Attachment A**

U.S. **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | |
|---|---|---|
| To: Emma Munoz<br>1216 Tanley Road<br>Silver Spring, MD 20904 | From: | Washington Field Office<br>1801 L Street, N.W.<br>Suite 100<br>Washington, DC 20507 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2006-01675 | Janet Stump,<br>Enforcement Supervisor | (202) 419-0736 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Janet A. Stump for*

Enclosures(s)

**Dana Hutter,**
**Director**

MAR 0 6 2008

*(Date Mailed)*

cc:
Christine Poole
Human Resource Director
University of the District
of Columbia
4200 Connecticut Ave., N.W.
Washington, DC 20008

Michael E. Veve, PLLC
Lasa, Monroig & Veve, LLP
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C. 20036

H
08-935
ESH

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

DR. EMMA M. MUÑOZ    88668

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael E. Veve, PLLC
Lasa, Monroig & Veve, LLP
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
202-261-3524

## DEFENDANTS

BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA
AND
DR. APRIL MASSEY

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTC

Case: 1:08-cv-00935
Assigned To : Huvelle, Ellen S.
Assign. Date : 6/2/2008
Description: Employ. Discrim.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊗ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

④

D.C. 3 X's

| ○ G. *Habeas Corpus/* 2255 | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 (Employment Discrimination; Race/National Origin)

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☑

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☑   If yes, please complete related case form.

DATE June 2, 2008   SIGNATURE OF ATTORNEY OF RECORD   *Michael E. Veve*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.