UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMMA MUÑOZ,  )<br>  )<br>           Plaintiff,  )<br>  )<br>v.  )<br>  )<br>BOARD OF TRUSTEES OF THE  )<br>UNIVERSITY OF THE DISTRICT OF  )<br>COLUMBIA,  )<br>  )<br>           Defendant.  )<br>  ) | Civil Action No. 08-0935 (ESH) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action against the Board of Trustees of the University of the District of Columbia ("UDC"), alleging discrimination and retaliation on the basis of national origin and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the District of Columbia Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1401.01 *et seq.*; 42 U.S.C. § 1983; and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, as well as a common law claim for intentional infliction of emotional distress.[1]  Defendant has moved to dismiss each of plaintiff's claims.[2]  For the reasons set forth below, the Court will grant the motion in part and deny it in part.

---

[1] Plaintiff also brought equal protection and intentional infliction of emotional distress claims against April Massey, her immediate supervisor. (*See* Compl. ¶¶ 2, 56-59, 87-91.)  However, those claims were previously dismissed with prejudice with plaintiff's consent. (*See* Pl.'s Resp. to Massey's Mot. to Dismiss, filed August 1, 2008; Court's Minute Order granting as unopposed Massey's Mot. to Dismiss, dated August 4, 2008.)

[2] Defendant filed a motion for a seven-day extension of time to file its Reply.  While defendant indicated that plaintiff opposed the motion, plaintiff has not filed any opposition to the motion nor will she be prejudiced if the motion is granted.  Accordingly, the Court will grant the motion.

**BACKGROUND**

Plaintiff is a white Hispanic woman born and raised in Puerto Rico. (Compl. ¶ 4.) She has a Ph.D. in linguistics, and in the fall of 1993, she and Dr. April Massey, who is African American, were hired by UDC as faculty for the Department of Languages and Communications Disorders ("DLCD"). (*Id.* ¶¶ 6, 13-14.) Throughout her employment at UDC, plaintiff was one of only two Hispanic faculty members. (*Id.* ¶ 15.) In 1999, Massey was appointed Chairman of the DLCD, with immediate supervisory responsibility over plaintiff. (*Id.* ¶ 17.) Massey held this appointment until 2004. (*Id.*) In the fall of 2002, plaintiff was promoted to associate professor, a tenured position. (*Id.* ¶ 18.)

Plaintiff alleges that during her term as Chairman of the DLCD, which ended in 2004, "Massey engaged in a consistent and continuous pattern of discriminatory harassment and adverse employment actions against plaintiff." (*Id.* ¶ 19; *see also id.* ¶¶ 20-30.) These acts culminated in the fall of 2004, when Massey falsely accused plaintiff of having supplied answers to four UDC students for the Departmental Comprehensive Exams. (*Id.* ¶ 31.) Thereafter, Massey sent a memorandum dated November 30, 2004, to Dr. Wilhelmina Reuben Cooke, UDC's Provost and Vice President for Academic Affairs, recommending that plaintiff be investigated regarding the matter and placed on indefinite administrative leave in the interim. (*Id.* ¶ 32.) Cooke accepted the recommendation and placed plaintiff on indefinite administrative leave, effective at the beginning of 2005. (*Id.*)

After assuring plaintiff that the investigation would last only six weeks, Cooke prolonged it for 12 months from November 2004 to November 2005, using procedures contrary to those in effect at UDC and without providing prior notice to the UDC Faculty Association, as required by UDC policies and procedures. (*Id.* ¶ 33.) During the investigation, plaintiff was never allowed

to speak in her own defense, confront witnesses against her, or record any proceedings to which she was summoned, nor was she presented with any investigative report. (*Id.*). On November 18, 2005, Cooke issued a "Statement of Cause" accompanied by a "Response to Recommended Adverse Action" calling for plaintiff to be charged with professional misconduct and interference with the integrity of UDC's academic operations, for plaintiff to be suspended for a semester, and for the adverse action to be placed in plaintiff's personnel file as part of her employment record. (*Id.* ¶ 34.)

According to plaintiff's complaint, she suffered severe emotional distress and anguish as a result of these adverse actions, and she was forced her to take sick leave beginning in the fall of 2005. (*Id.* ¶ 39.) On January 20, 2006, she appealed Cooke's conclusions and recommendations. (*Id.* ¶ 35.) On February 28, 2006, Dr. William Pollard, the President of UDC, dismissed Cooke's proposed adverse action against plaintiff on the ground of insufficient evidence, although Pollard expressed support for the investigation and stated that Massey and other UDC officials had acted appropriately. (*Id.* ¶ 36.) No action was taken to restore plaintiff's pay. (*Id.*)

When plaintiff's sick leave expired in February 2006, UDC stopped paying her wages. (*Id.* ¶ 40.) Moreover, during the summer and fall of 2006, plaintiff sent several letters to various officers of UDC requesting clarification of her employment status, but received no response. *(Id.* ¶ 37.) On November 22, 2006, Dr. Leslie Richards, President of the UDC Faculty Association, sent an email to plaintiff, in which she stated, "The University has approached me with attempting to settle the case through some restitution of your pay and other issues, however I do not know whether you are interested in any of this." (*Id.* ¶ 38.) Plaintiff responded that she would be willing to negotiate through her attorney, but UDC never replied. (*Id.*)

During the summer of 2007 and without prior notice to plaintiff, UDC terminated her health insurance policy and deprived her of any opportunity to apply for COBRA extension coverage.  (*Id.* ¶ 41.)

## ANALYSIS

### I. Standard of Review

A case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1965.

### II. Title VII Claims

Plaintiff alleges that UDC discriminated against and harassed her in the course of her employment and constructively discharged her on account of her race and national origin and retaliated against her for complaining of the discriminatory treatment in violation of Title VII.  Defendant moves to dismiss plaintiff's Title VII claims on the basis that they are time barred.  Ordinarily, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice

occurred. 42 U.S.C. § 2000e-5(e)(1). However, if a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the unlawful employment practice, the charge must be filed within 300 days after the alleged unlawful employment practice occurred. *Id.* In this case, plaintiff filed a charge with the D.C. Office of Human Rights, the agency given the power in the District to deal with unlawful employment claims, and with the EEOC on February 14, 2007.[3] (*See* Compl. ¶ 10; Mot. to Dismiss Ex. A.) Thus, the unlawful employment practices of which plaintiff complains must have occurred no earlier than April 20, 2006; that is, within 300 days of her February 14, 2007 EEOC filing. Defendant argues that because plaintiff alleges no discriminatory event that occurred within this timeframe, her Title VII claims are untimely. Plaintiff contends, however, that her claims are not time barred because UDC subjected her to a series of "continuing and systematic discriminatory acts." (Opp'n at 6.)

Claims of discrete discriminatory or retaliatory acts "must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred" and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). By contrast, because "[a] hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice,'" a court may consider acts outside the limitations period "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. Even assuming that

---

[3] The complaint does not indicate when plaintiff filed her charge with the Office of Human Rights, although defendant includes a copy of the charge in its Motion to Dismiss. The Court may take judicial notice of public documents, such as court records, without converting the motion to dismiss into a motion for summary judgment. *Vance v. Chao*, 496 F. Supp. 2d 182, 184 n.1 (D.D.C. 2007).

plaintiff has asserted a valid hostile work environment claim, her Title VII claims are untimely.[4]

The only acts by UDC on or after April 20, 2006, that plaintiff mentions in her complaint are the failure of UDC to respond to her letters during the summer and fall of 2006 requesting clarification of her employment status, the November 22, 2006 email from Faculty Association's president regarding possible settlement of plaintiff's case, and the termination of plaintiff's health insurance policy during the summer of 2007.  However, none of these events constitutes an unlawful employment practice.  UDC's failure to respond to letters regarding plaintiff's employment status or to follow up with her to resolve her discrimination claims are not themselves discriminatory acts.  Rather, the latest act of discrimination would presumably have occurred sometime in the fall of 2005 when plaintiff was allegedly "forced" to take sick leave.[5] (Compl. ¶ 39.)  Moreover, as plaintiff concedes in her complaint, her sick leave expired in February 2006, but she failed to return to work.  Accordingly, UDC's failure to continue plaintiff's health insurance was the result, not of discrimination, but of her failure to return to work for more than a year after having used up all her leave.  *See Guerra v. Cuomo*, 176 F.3d 547, 551 (D.C. Cir. 1999) (noting that "[a] lingering effect of an unlawful act is not itself an unlawful act" (quoting *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir.

---

[4] Plaintiff alleges that the discrimination and harassment she experienced "created an intolerably hostile work environment . . . ."  (Compl. ¶ 62.)

[5] While plaintiff does not specify the date of her constructive discharge claim, it had to have accrued at the latest sometime in the fall of 2005 when she went on sick leave (*see* Compl. ¶ 39), since the investigation of plaintiff concluded around that time and working conditions could not have been intolerable after she went on sick leave at the end of 2005.  *See Velikonja v. Gonzales*, No. 04-1001, 2005 U.S. Dist. LEXIS 43780, *20 (D.D.C. June 30, 2005) (finding that plaintiff's constructive discharge claim accrued when she took leave without pay rather than later when she was forced to resign since every alleged retaliatory or discriminatory act took place during the former time frame and her working conditions could not have become intolerable when she was not going to work).

1997))); *Wiggins v. Powell*, No. 02-1774, 2005 U.S. Dist. LEXIS 3984, at *56 (D.D.C. Mar. 7, 2005) (Employee's action is time-barred where there have been "no new violations during the limitations period, but merely a refusal to rectify the consequences of time-barred violations." (quoting *Dasgupta*, 121 F.3d at 1140)). Accordingly, plaintiff's Title VII claims must be dismissed as time barred.[6]

## III.   DCHRA Claims

Defendant alleges that plaintiff's DCHRA claims, which mirror her claims under Title VII, are time barred. Pursuant to the D.C. Code, a claim under DCHRA must be filed "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a). Plaintiff filed this action on June 2, 2008. Therefore, to be timely, the discriminatory acts of which plaintiff complains must have occurred no earlier than June 2, 2007. For the same reasons that plaintiff's Title VII claims are time barred, her DCHRA claims are also untimely. Plaintiff sets forth not one discriminatory or retaliatory act that occurred on or after June 2, 2007. Accordingly, her DCHRA claims must be dismissed.

## IV.   Claim for Intentional Infliction of Emotional Distress

Plaintiff also brings a claim for intentional infliction of emotional distress, which defendant alleges is time barred. An independent action for intentional infliction of emotional distress is subject to the District's three-year residual limitation period. *See* D.C. Code § 12-301(8); *see also Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 27 (D.D.C. 2002). "The residuary three-year limitation applies, however, only if the intentional infliction of emotional distress claim is not 'intertwined with any of the causes of action for which a period of limitation

---

[6] Because the Court agrees with defendant's argument that all of plaintiff's Title VII claims are time barred, it need not reach defendant's other proposed grounds for dismissing plaintiff's Title VII constructive discharge and retaliation claims.

is specifically provided . . . .'" *Thompson*, 212 F. Supp. 2d at 27 (quoting *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997)).  Here, plaintiff's emotional distress claim is based on the exact same conduct that forms the basis of her DCHRA claims; therefore, the claims are intertwined, and the emotional distress claim assumes the DCHRA claims' one-year statute of limitations period.  *See Bryant v. Orkand Corp.*, 407 F. Supp. 2d 29, 36 (D.D.C. 2005) (finding that plaintiff's intentional infliction of emotional distress claim was based on his discriminatory and hostile work environment claims under DCHRA and therefore, the former claim was subject to the one-year limitations period).  Because plaintiff fails to set forth any discriminatory or retaliatory act that occurred on or after June 2, 2007, her intentional infliction of emotional distress claim must be dismissed as untimely.[7]

## V.  Constitutional Claims

Plaintiff also alleges violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Defendant contends that it afforded plaintiff due process of law when she availed herself of UDC's appeal procedures and appealed to President Pollard, who thereafter dismissed the adverse employment action proposed by Provost Cooke.  Moreover,

---

[7] To state a claim for intentional infliction of emotional distress, a plaintiff must demonstrate extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress. *Bryant*, 407 F. Supp. 2d at 37.  Moreover, "[t]he conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks omitted)).  By June 2, 2007, plaintiff was out on sick leave and was not even working at UDC.  Moreover, the only act that plaintiff alleges UDC to have taken in 2007 was the termination of her health insurance and barring of her ability to apply for COBRA extension coverage.  As explained previously, this action was not discriminatory.  Moreover, it does not qualify as "outrageous or extreme."  Thus, plaintiff fails to state a claim for intentional infliction of emotional distress within the relevant time frame.

defendant contends that plaintiff's equal protection claim is time barred.[8]  Finally, defendant argues that plaintiff's constitutional claims should be dismissed because the Fourteenth Amendment is inapplicable to the District of Columbia.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

### A. Due Process

In support of her due process claim, plaintiff contends that she "avers a proper due process denial claim when, during *the pre-appeal investigatory and disciplinary phases of the proceeding*, UDC failed to follow and/or enforce its own applicable and exclusive standards and procedures governing disciplinary investigations and adverse actions against UDC faculty members . . . ."  (Opp'n at 4 (emphasis in original).)  Thus, plaintiff's due process claim consists of her allegations that UDC placed her on administrative leave for a year while she was being investigated without providing her with a hearing until she appealed Provost Cooke's recommendations in January 2006.  To the extent that this leave was without pay, which cannot be determined from the face of the complaint, plaintiff would appear to have stated a due process claim.  *See Gilbert v. Homar*, 520 U.S. 924, 935-36 (1997) (finding that although a post-suspension hearing was adequate under the circumstances presented, due process entitled university employee to a prompt hearing following his suspension without pay).

---

[8] Defendant also argues that plaintiff has failed to sufficiently plead an equal protection claim.  However, as defendant itself concedes, plaintiff has alleged that she was treated differently from her African-American counterparts on the basis of her race and national origin.  (*See* Reply at 4.)  Therefore, the Court cannot say at this juncture that plaintiff has not set forth sufficient allegations to state a cause of action under the Equal Protection Clause.  *See Twombly*, 127 S. Ct. at 1965.


### B.     Equal Protection

Plaintiff's equal protection claim is subject to the District's three-year residual limitation period, D.C. Code § 12-301(8). *See Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (D.C. Code § 12-301(8) provides statute of limitations for § 1983 claims); *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1429 (D.C. Cir. 1986) (§ 12-301(8) provides statute of limitations for most *Bivens* actions).[9] Thus, to be timely, plaintiff's claim must have accrued on or after June 2, 2005. Defendant contends that plaintiff's claim is untimely because all of plaintiff's equal protection allegations are based on acts committed by Massey in 2004 or earlier. (*See* Mot. to Dismiss at 7, Reply at 4.) Plaintiff contends that her equal protection claim accrued on November 18, 2005, the date that Provost Cooke adopted the adverse employment recommendations against her.

To establish an equal protection claim, plaintiff must show that she was singled out from among others similarly situated on the basis of race and/or national origin. *See Fernandors v. District of Columbia*, 382 F. Supp. 2d 63, 69 (D.D.C. 2005). Thus, to the extent that plaintiff is merely alleging that Massey's discriminatory actions, all of which took place prior to 2005, had

---

[9] Recognizing "the primacy of federal interests embodied in the civil rights statutes," the D.C. Circuit in *Banks* rejected the application of DCHRA's one-year statute of limitations to claims brought under 42 U.S.C. § 1981:

> We cannot "borrow" [DCHRA's] statute of limitations because we conclude that the Civil Rights Act's emphasis on providing relief to victims of discrimination is inconsistent with the District of Columbia's remedial scheme's emphasis on the need to minimize the diversion of state officials' attention by shortening limitation periods. . . . Because [DCHRA] emphasizes interests that are "inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Act," it would be inappropriate to borrow that Act's one-year statute of limitations to govern federal civil rights actions.

802 F.2d at 1423 (D.C. Cir. 1986) (footnote and citations omitted). This same admonition applies to plaintiff's equal protection claim.

ongoing negative consequences, her claim is time barred.  However, to the extent that plaintiff is alleging that the conduct of the investigation in violation of her due process rights and the adoption of the adverse employment recommendations were motivated by her race and/or national origin, she may be able to sustain a claim for violation of her equal protection rights.  (*See* Compl. ¶ 51 ("By failing to undertake an appropriate investigation of the charges against Plaintiff . . . UDC deprived and denied to Plaintiff her rights under the Equal Protection Clause . . . .").)

Accordingly, the Court will not dismiss plaintiff's constitutional claims.  However, because the Fourteenth Amendment is inapplicable to the District of Columbia, the Court will require plaintiff to amend her complaint to bring her constitutional claims in Counts I and II under the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Dkt. #10] is granted in part and denied in part.  Defendant's motion for an extension of time [Dkt. #12] is granted.  All counts of the complaint except Counts I and II are dismissed with prejudice.  Moreover, plaintiff shall file an amended complaint on or before December 13, 2008 to allege violations of the Fifth Amendment.  Should plaintiff fail to timely amend her complaint, this case will be dismissed with prejudice.  An initial scheduling conference is set for January 28, 2009, at 9:45 a.m.

                                            /s/
                                ELLEN SEGAL HUVELLE
                                United States District Judge

Date:  December 3, 2008